UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------------x
GLORIA GAZZOLA, Individually and as Administrator of
the Estate of ANTONIO MARINACCIO, JR.,

              Plaintiff,

        -against-

COUNTY OF NASSAU, NASSAU COUNTY CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, MICHAEL J. SPOSATO, Individually and as Sheriff of NASSAU COUNTY, ARMOR CORRECTIONAL HEALTH SERVICES, INC., ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC., NASSAU COUNTY CORRECTIONS OFFICERS, "JOHN DOES 1-10", in their Individual and Official Capacities, ARMOR CORRECTIONAL HEALTH SERVICE EMOLOYEES AND AGENTS, "JOHN AND JANE DOES 11-20", in their Individual and Official Capacities,

              Defendants.
---------------------------------------------------------------------------------x

**MEMORANDUM OF DECISION & ORDER**
16-cv-0909 (ADS) (AYS)

**APPEARANCES:**

**Law Offices of Harry C. Demiris, Jr., P.C.**
*Attorney for the Plaintiff*
400 Post Avenue
Suite Ll1
Westbury, NY 11590

**Nassau County Attorney's Office**
*Attorneys for the Defendants County of Nassau, Nassau County Correctional Center, Nassau County Sheriff's Department, and Michael J. Sposato*
1 West Street
Mineola, NY 11501
       By:    Andrew R. Scott, Deputy County Attorney

**Lewis Brisbois Bisgaard & Smith, LLP**
*Attorneys for the Defendants Armor Correctional Health Services, Inc. and Armor Correctional Health Services of New York, Inc.*
77 Water Street
Suite 2100
New York, NY 10005
    By:    John J. Doody, Esq., Of Counsel

**SPATT, District Judge**:

On February 23, 2016, the Plaintiff Gloria Gazzola, acting on her own behalf and as the Administrator of the Estate of Antonio Marinaccio, Jr., commenced this civil rights action under 42 U.S.C. § 1983 against two discrete sets of Defendants, namely: (1) the "County Defendants," including Nassau County (the "County"), Nassau County Correctional Center ("NCCC"), the Nassau County Sheriff's Department ("NCSD"), and Michael J. Sposato ("Sheriff Sposato"); and (2) the "Armor Defendants," including Armor Correctional Health Services, Inc. ("Armor") and Armor Correctional Health Services of New York, Inc. ("Armor NY").

Gazzola also brought this action against 20 "John Doe" Defendants, ten of whom are alleged to be County corrections officers; ten of whom are alleged to be employees and agents of the Armor Defendants; and all of whom are presently unknown to the Plaintiffs.

On August 3, 2016, the Plaintiff voluntarily discontinued this action as against NCCC and the NCSD. Thus, at present, the "County Defendants" include only the County and Sheriff Sposato.

Presently before the Court is a motion by these County Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(6), to dismiss the claims against them. For the following reasons, their motion to dismiss is granted in part and denied in part.

# I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the complaint and construed in favor of the Plaintiff.

## A. The Allegations Concerning Below-Standard Conditions at NCCC

NCCC is a County-owned and operated correctional facility. According to the Plaintiff, the medical treatment and health care provided to inmates at NCCC are now, and have long been deficient. In this regard, the Plaintiff alleges that at least nine inmates have died at NCCC since 2010, all of which deaths were preventable. The Plaintiff alleges that despite having actual knowledge of this situation, Nassau County and Sheriff Sposato have failed to meaningfully address it.

According to the complaint, the County has attempted to address certain human rights and health care problems at NCCC by, for example, amending the County Charter to establish a Board of Visitors (the "Board"). The proposed responsibilities of the Board included authority to investigate inmate grievances; inspect the facility; examine records; create reports; and advise the Sheriff's Department about changes that could improve the facility and prevent unnecessary deaths. The County Charter provision that established the Board was a mandate; nevertheless, apparently, several successive County administrations have failed to appoint any members to the Board.

In 2009, the New York State Commission of Correction (the "NYSCOC") issued a report finding the NCCC to be out of compliance with the basic minimum standards for operating a correctional facility in New York State. In this regard, the NYSCOC set forth 25 recommended steps that would improve the conditions at NCCC and bring the institution into compliance with

the applicable standards, including, of relevance here, addressing the health and medical care needs of inmates.

In addition to other adverse reports issued by the NYSCOC, the United States Department of Justice ("USDOJ") has allegedly also criticized the conditions at NCCC. As has the New York Civil Liberties Union (the "NYCLU"), which, in 2012, brought a legal action against the County on behalf of inmates who alleged that they suffered health and medical mistreatment while incarcerated at the NCCC. In its lawsuit – which alleged malfeasance ranging from inmates being administered incorrect dosages of their medication to being deprived of opportunities to visit a physician despite serious medical issues like broken bones – the NYCLU sought to finally compel the appointment of the oversight Board.

In March 2013, as a result of the NYCLU's lawsuit, a New York State Supreme Court Justice ordered the appointment of the Board, whose members were thereafter nominated and confirmed by the Nassau County Legislature. However, to date, the Board has allegedly failed to convene to address the health and medical needs of inmates at the NCCC.

On May 14, 2011, County officials, including Sheriff Sposato, negotiated the terms of a contract with the Armor Defendants – a Florida corporation and its domestic subsidiary, both of whom are engaged in the business of providing private health care services to correctional facilities – to take over the health care services at NCCC. In a related press release, the County reportedly estimated that this arrangement would result in annual savings of approximately seven million dollars to the County.

The County successively renewed its contract with the Armor Defendants in 2013 and 2015. However, since Armor assumed responsibility for the medical care of the County's inmates, the number of treatment-related complaints has allegedly escalated. In this regard,

inmates have allegedly complained that doctors are no longer available seven days a week; that inmates are denied treatment on the weekends; and that the Armor Defendants erect barriers to proper care by denying sick call requests and using non-medical personnel to evaluate inmates.

**B.      The Allegations Relating to the Plaintiff's Decedent**

As noted above, the Plaintiff in this case, namely, Gloria Gazzola, commenced this action partly in her capacity as the administrator of the estate of her late son Antonio Marinacchio, Jr. (the "Decedent").

On or about April 24, 2015, the Decedent was incarcerated at NCCC. At the time he entered custody, he allegedly suffered from certain pre-existing medical conditions. Although the exact nature of these conditions is not clear from the complaint, the Plaintiff alleges that his pertinent medical records accompanied him to the NCCC, and therefore, members of the NCSD, NCCC, and the Armor Defendants were aware of his condition at that time.

Upon his arrival at the NCCC, a registered nurse employed by the Armor Defendants allegedly examined the Decedent and noted that he had significant and potentially serious health issues that required immediate attention from a doctor. The nurse requested that a doctor order chest x-rays and an echocardiogram, and that the Decedent be treated with medication. However, when a physician employed by the Armor Defendants eventually saw the decedent, he refused to order the x-rays or diagnostic imaging; he did not physically examine the Decedent; and he did not provide or order any medication.

Sometime between April 25, 2015 and the early morning hours of April 26, 2015, the Decedent allegedly complained of chest pain and difficulty breathing to NCCC corrections officers and the medical staff employed by the Armor Defendants. In response to these complaints, a nurse examined the Decedent, who the complaint alleges failed to use proper

5

equipment and medical supplies. The Decedent was not seen by a doctor on this occasion and was not taken off-site to a hospital.

On April 26, 2015, at or about 2:47 A.M., the Decedent again complained of chest pains. He again relayed these complaints to a corrections officer, who summoned a nurse to examine him. The nurse determined that the Decedent's vitals were "good" and that the nurse would wait until later in the morning to notify a doctor of his medical condition. The Plaintiff alleges that the medical records purporting to track the treatment of the Decedent during these hours were subsequently altered by the Armor Defendants.

Nevertheless, at 3:34 A.M., on the morning of April 25, 2015, while still waiting to be seen by a doctor, an alarm was activated to alert corrections officers that the Decedent was undergoing a medical emergency. A nurse responded and called an ambulance. When emergency medical technicians ("EMTs") arrived, they were allegedly denied entry to the facility by medical staff until a supervisor employed by the Armor Defendants authorized them to gain access to the facility. While the EMTs waited, they allegedly warned the medical staff that the Decedent could suffer further injury if he was not immediately taken to a hospital.

The Decedent arrived at the emergency room at the Nassau University Medical Center at 4:11 A.M. in ventricular fibrillation with no spontaneous circulation. According to the complaint, the medical staff administered a series of electric shocks to the Decedent, which, after approximately fifteen minutes, supported a sinus rhythm. He was then transferred to North Shore University Hospital for urgent cardiac catherization.

When the Decedent's family members, including the Plaintiff, arrived at the hospital on the morning of April 26, 2015, they allegedly observed red marks around the Decedent's neck, as well as cuts and bruises on his face, forehead and torso. Employees of the Armor Defendants

and County correctional officers allegedly offered multiple and conflicting accounts of how the Decedent sustained these injuries.

On May 1, 2015, doctors declared that the Decedent was brain dead. On May 2, 2015, he was taken off life support and died. The Decedent was fifty-three (53) years of age.

## II. RELEVANT PROCEDURAL HISTORY

Based on these facts, on February 23, 2016, the Plaintiff commenced this action against all of the Defendants, asserting 11 separate causes of action. Two of these claims allege deprivations of the Decedent's federal constitutional rights, in violation of 42 U.S.C. §§ 1983 and 1985.

The remaining causes of action appear to arise under New York State common law, and allege: (1) failure to train; (2) failure to supervise; (3) failure to provide adequate medical care; (4) mistakes in medical treatment; (5) deliberate indifference; (6) vicarious liability; (7) negligence; (8) wrongful death; (9) failure to treat and/or diagnose; and (10) intentional infliction of emotional distress.

As noted above, on April 8, 2016, the County Defendants filed a motion under FED. R. CIV. P. 12(b)(6) to dismiss the claims against them. In support of their motion, the County Defendants raise the following arguments: (1) Sheriff Sposato, in his official capacity, acted at all relevant times as an administrative agent of the County, and is not a separate entity capable of being sued; (2) the complaint fails to plead sufficient facts regarding Sherriff Sposato's personal involvement in the events at issue to plausibly state a federal civil rights claim against him; (3) the complaint fails to plead sufficient facts regarding an official County policy or procedure to plausibly state a federal civil rights claim against the municipality; and (4)

upon dismissal of the Plaintiff's federal claims, the Court should decline to exercise jurisdiction over his remaining state law claims.

## III. DISCUSSION

### A. The Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. See Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013); Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995); Reed v. Garden City Union Free School Dist., 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679.

**B.   As to Whether the Complaint States Plausible Claims for Relief under § 1983**

   **1.   The Applicable Law**

      **a. Section 1983 Generally**

42 U.S.C. § 1983 provides, in relevant part, that "any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, is liable to the injured party for damages."

To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law"; and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 does not create any independent substantive right, but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see also Rosa R. v. Connelly, 889 F.2d 435, 440 (2d Cir. 1989).

      **b. Section 1983 Claims Against Individual Actors in their Official Capacities**

A suit against an individual in his or her official capacity is "to be treated as a suit against the entity [of which an officer is an agent]." Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). In this regard, "[i]t is not a suit against the official

personally, for the real party in interest is the entity." Id. "Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." Phillips v. County of Orange, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y.2012) (citations omitted). See also Canzoneri v. Incorporated Village of Rockville Centre, 986 F.Supp.2d 194, 205 (E.D.N.Y. 2013) (dismissing official capacity claims against individual defendants "because they are duplicative of the Monell claims against the [municipality]."); Field Day, LLC v. County of Suffolk, 799 F. Supp. 2d 205, 214 (E.D.N.Y. 2011) (dismissing official capacity claim because the real party in interest was the County, which was a named party to the action); Schubert v. City of Rye, 775 F. Supp. 2d 689, 699–700 (S.D.N.Y. 2011) (dismissing official capacity claims as redundant); Castanza v. Town of Brookhaven, 700 F.Supp.2d 277, 283–84 (E.D.N.Y. 2010) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" (brackets, internal quotation marks and citations omitted)).

### c. Section 1983 Claims Against Individual Actors in their Individual Capacities

The Supreme Court held in Iqbal that "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676. Thus, a "plaintiff asserting a Section 1983 claim against a supervisory official in his individual capacity" must sufficiently plead that the "supervisor was personally involved in the alleged constitutional deprivation." Rivera v. Fischer, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009). Stated otherwise, a complaint based upon a violation under Section 1983 that does not allege the

personal involvement of a defendant fails as a matter of law and should be dismissed. See Johnson v. Barney, 360 F. App'x. 199, 201 (2d Cir. 2010).

A plaintiff may establish such "personal involvement" by making any one of five showings:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). These criteria, drawn from the Second Circuit's decision in Colon, are known as the "Colon factors". Warren v. Pataki, 823 F.3d 125, 135 (2d Cir. 2016).

Relevant here, where a § 1983 claim against an individual defendant is premised upon a convicted prisoner's allegations that those overseeing his medical care were deliberately indifferent to his needs, the analysis is typically framed under the Eighth Amendment, with courts construing the rights seeking to be vindicated as arising under the federal constitution's prohibition against cruel and unusual punishment. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009).

A claim for deliberate indifference to medical needs has both objective and subjective components. See Collazo v. Pagano, 656 F.3d 131, 135 (2d Cir. 2011); Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). Objectively, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." Hill, 657 F.3d at 122 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). In order to determine whether an alleged deprivation of medical care was objectively

serious, the court must consider: (1) whether the inmate was "actually deprived of adequate medical care," *i.e.*, whether the prison officials acted reasonably in response to the inmate's medical needs; and (2) "whether the inadequacy in medical care [was] sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994)).

"Subjectively, the official must have acted with the requisite state of mind, the 'equivalent of criminal recklessness,' " Collazo, 656 F.3d at 135 (quoting Hathaway, 99 F.3d at 553); Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (holding that a deliberate indifference claim "mandate[s] inquiry into a prison official's state of mind."), *i.e.*, the official must have "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280; Caiozzo, 581 F.3d at 72 (holding that the plaintiff must establish that the official "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference" (alterations and quotation marks omitted)).

### d. 1983 Claims Against Municipalities, namely, "Monell Claims"

It is well-established that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). However, section 1983 "extends liability to a municipal organization where . . . the policies or customs it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). "Municipal liability may also be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.' " Okin v. Village of

Cornwall–On–Hudson Police Dept., 577 F.3d 415, 440 (2d Cir. 2009) (quoting City of Canton v. Harris, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989)).

To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." Cash v. Cty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359, 179 L.Ed. 2d 417 (2011)); see also Monell, 436 U.S. at 690–91 ("[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels").

A plaintiff can establish the existence of a municipal policy or custom by showing:

(1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees.

Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citations omitted).

At this stage, the Plaintiff need not prove these elements by a preponderance of the evidence, but still must plead them with sufficient factual detail to make it a plausible that a violation occurred. Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163, 122 L. Ed. 2d 517 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," Iqbal, 556 U.S. at 678. Thus, to survive a motion to dismiss, the Plaintiff cannot merely allege the existence of a municipal policy or custom, but "must allege facts tending to

13

support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos v. New York City, 847 F.Supp.2d 573, 576 (S.D.N.Y.2012).

2. **Application to the Facts of this Case**

    a. **As to the § 1983 Claims Against Sheriff Sposato in his Official Capacity**

As noted above, the Supreme Court and courts within this Circuit have consistently held that a claim against both an individual defendant in his or her official capacity, as well as the municipality in which they are an official, is duplicative and merely a suit against the municipality itself. Therefore, to the extent the Plaintiff seeks to hold Sheriff Sposato liable for conduct also attributed to the County, the complaint is impermissibly redundant and the claims against Sheriff Sposato in his official capacity fail.

Accordingly, the motion to dismiss the complaint against Sheriff Sposato in his official capacity is granted.

    b. **As to the § 1983 Claims Against Sheriff Sposato in his Individual Capacity**

The Court interprets the Plaintiff's theory of liability as against Sheriff Sposato in his individual capacity to be one of supervisory liability. In particular, the Plaintiff does not allege that Sheriff Sposato ever met the Decedent; was informed that the Decedent was an inmate at the NCCC; that he made any decisions regarding the Decedent; or that he disregarded any information regarding the Decedent. However, as noted above, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir.1991); see also Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987) (holding that a complaint that fails to

14

allege the individual defendant's personal involvement is "fatally defective on its face"). Therefore, "an individual defendant cannot be held liable for damages simply because he or she holds a supervisory position." Stamile v. Cty. of Nassau, No. 10–cv–2632, 2014 WL 1236885, at *3 (E.D.N.Y. Mar. 25, 2014); see also Black v. Coughlin, 76 F.3d 72, 74 (2d Cir.1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.").

Nevertheless, a supervisory official can still be found liable under three of the Colon factors. A supervisor who was not personally involved in the alleged constitutional violation may be liable under 42 U.S.C. § 1983 if the official: "(1) after learning of the violation, failed to remedy the wrong; (2) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) was grossly negligent in managing subordinates who caused the unlawful condition or event." Solomon v. Nassau Cty., 759 F. Supp. 2d 251, 256 (E.D.N.Y. 2011) (Spatt, J.) (quoting Spencer v. Doe, 139 F.3d 107, 112 (2d Cir.1998)).

Plaintiff does not allege any facts that would plausibly support an inference that Sheriff Sposato created a policy or custom under which Plaintiff's constitutional rights were violated, **or** that he allowed the continuance of such a policy or custom, or that he was grossly negligent in supervising his subordinates.

Because the Plaintiff does not allege that Sheriff Sposato was "personally involved" in the alleged failure to provide medical treatment, the Court dismisses the 1983 claim against Sposato in its entirety without prejudice.

### c.     As to the 1983 Claims Against Nassau County

The Plaintiff has attempted to establish that Nassau County can be implicated by each of the possible paths laid out by Moray.  In the Court's view, at the very least, the Plaintiff has sufficiently pled that the insufficient medical care was so persistent and widespread at the NCCC that it constituted a custom of which constructive knowledge and acquiescence can be implied on the part of Nassau County officials.  See Monell, 436 U.S. at 690–91.

As discussed above, according to the complaint, Nassau County has disregarded sanctions from the Department of Justice; New York State Supreme Court orders; multiple reports with recommendations from NYSCOC; complaints from inmates; and NCCC and Armor's poor record of attending to prisoner's medical needs.  Allegedly, doctors are not available at all times at the NCCC; inmates have died unnecessarily; and non-medical personnel examine inmates.  It is apparent that Nassau County may have made these decisions to save money.  In the Court's view, these facts, taken together, are sufficient to make it plausible that Nassau County officials were aware of the need for medical reform at the NCCC.

In Kucharczyk v. Westchester Cty., 95 F. Supp. 3d 529 (S.D.N.Y. 2015), the court held that the complaint against Westchester County was sufficient to survive a motion to dismiss under similar circumstances.  There, the pro se plaintiff alleged that his hernia went untreated for months despite numerous pleas for care and scheduled surgeries.  He further alleged that Westchester County knew that such problems were widespread within the facility because numerous suits had already been filed against the County, and similar to this case, the Department of Justice had issued a report against the county about its insufficient medical care. Id. at 534.  There, as here, these suits and reports long preceded the plaintiff's complaint.  Under these circumstances, the Court stated that "[t]he DOJ Report's conclusions about medical care at

[the prison] . . . constitute[ ] . . . sufficient allegation[s] of a custom of repeated constitutional violations, which were sufficiently pervasive as to suggest acquiescence on the part of the County's policymakers." Id. at 544. (internal citations and quotations omitted).

Similarly, in Donohue v. Manetti, No. 15-CV-636 (JFB)(GRB), 2016 WL 740439 (E.D.N.Y. Feb. 24, 2016), the court also found that the complaint sufficiently pled a Monell claim, where the Plaintiff alleged that doctors employed by the Armor defendants failed to give him the medication that had been prescribed to him and was listed on his intake information. Allegedly, in that case, a doctor employed by Armor told him, "things are different now and we don't hand out pills anymore – deal with it." Id. at *1. The plaintiff in Donohue also alleged that he had been superficially treated for a neck injury at NCCC and that once he was treated, the nurse disregarded the allergy notations on his sheet and prescribed medicine to which he developed an allergic reaction. With these authorities in mind, the Court is of the view that the Plaintiff in this case alleged sufficient facts from which an inference arises that Nassau County knew that a policy or practice that resulted in insufficient medical care existed.

In particular, based on the numerous criticisms of the NCCC, in the Court's view, Nassau County was aware of the recurring problems of medical treatment, and the inadequacy of its current practices that was likely to result in a deprivation of federal rights. See e.g., Santiago v. Westchester Cty., No. 13 CIV. 1886 LGS, 2014 WL 2048201, at *2 (S.D.N.Y. May 19, 2014) (holding that Westchester County plausibly knew about persistent abuse by correctional officers due to a report by the Department of Justice).

Accordingly, the Court finds that the Plaintiff has sufficiently alleged a widespread practice or policy of failing to properly treat inmates of which Defendant Nassau County was

aware. Therefore, to the extent the County Defendants seek to dismiss the Plaintiff's § 1983 claims on this ground, their motion to dismiss is denied.

**C. As to the Section 1985 and Pendent State Law Claims**

The motion by the County Defendants seeks to dismiss the complaint against them in its entirety. However, the County Defendants do not address in any meaningful way the Plaintiff's claims against them based on violations of 42 U.S.C. § 1985, and various theories of New York State common law. Rather, the County Defendants apparently assume that the Court will dismiss all of the federal claims against the County Defendants, and that the Court should therefore decline to exercise supplemental jurisdiction. Def.'s Mem. of Law at 10.

The Court declines to rule *sua sponte* on whether or not the Plaintiff has sufficiently plead claims under § 1985 against the County Defendants. As the Court has not dismissed all of the federal claims against the County Defendants, the Court does not rule on the merits of the state law claims at this time.

**D. As to the Plaintiff's Request for Leave to Amend**

Finally, in her legal memorandum, the Plaintiff requested leave to amend the complaint in the event that the Court granted any aspect of the County Defendant's motion. Pl. Mem. of Law at 23.

The Court denies the Plaintiff's request for leave to amend the complaint at this juncture, as it is procedurally improper. Courts have held that a "bare request to amend a pleading" contained in a brief, which does not also attach the proposed amended pleading, is improper under FED. R. CIV. P. 15. See, e.g., Curry v. Campbell, 06-cv-2841 (DRH)(ETB), 2012 U.S. Dist. LEXIS 40341, at *22 (E.D.N.Y. Mar. 23, 2012) ("To satisfy the requirement of particular[it]y in a motion to amend a pleading, the proposed amended pleading must accompany

the motion so that both the Court and opposing parties can understand the exact changes sought") (quoting AT&T Corp. v. Am. Cash Card Corp., 184 F.R.D. 515, 521 (S.D.N.Y. 1999)); see also Evans v. Pearson Enters., Inc., 434 F.3d 839, 853 (6th Cir. 2006) ("We agree with several of our sister circuits that a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . .—does not constitute a motion within the contemplation of Rule 15(a)") (quoting Confederate Mem'l Ass'n, Inc. v. Hines, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Under these circumstances, courts, in their discretion, may hold the motion to dismiss in abeyance pending the filing of the proposed pleading or deny the motion to amend without prejudice. See AT&T Corp., 184 F.R.D. at 521.

Accordingly, the Court finds the Plaintiff's request is procedurally improper under FED. R. CIV. P. 15 and, in its discretion, denies it on that basis without prejudice and with leave to renew as a formal motion.

### IV. Conclusion

Based on the foregoing, the Defendant's motion to dismiss the Plaintiff's 1983 claims against Sheriff Sposato is granted, and the Defendant's motion to dismiss the Plaintiff's 1983 claims against Nassau County is denied.

The 1983 claims against Sheriff Sposato in his official capacity are dismissed with prejudice, and the 1983 claims against Sheriff Sposato in his individual capacity are dismissed without prejudice.

The Court does not address the merits of the 1985 claims or the various claims made under New York State common law.

This case is respectfully referred to United States Magistrate Judge Anne Y. Shields for the remainder of discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York
October 13, 2016

                                                      */s/ Arthur D. Spatt*
                                                      ARTHUR D. SPATT
                                            United States District Judge